# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JAMES L. PATTERSON,

      Plaintiff,

v.                                                 No. CIV 97-1289 JP/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1.    This matter comes before the Court upon Plaintiff's (Patterson's) Motion to Reverse and Remand for Payment of Benefits, filed June 24, 1998. The Commissioner denied Patterson's application for disability insurance benefits. Patterson, now 56 years old, alleges a disability which commenced February 1, 1990, due to hernias and abdominal problems. He is a high school graduate with past relevant work experience as a machinist.

    2.    The Commissioner denied Patterson's application both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found Patterson had the residual functional capacity for sedentary work and was a younger individual. Applying the grids, the ALJ concluded Patterson was not disabled. The Appeals Council denied Patterson's request for review of the ALJ's decision. Patterson appealed to the United States District Court, which remanded for an individualized consideration of whether he should be classified as a younger person or a person closely approaching advanced age. *Patterson v. Shalala*, 93cv0171 JP/LFG. On remand, the ALJ held a second administrative hearing, at which Patterson, his attorney, and a vocational expert appeared. The ALJ again denied the application. This time, however, the ALJ

concluded Patterson had the residual functional capacity for light work. Tr. 179. Relying on the testimony of a vocational expert, the ALJ concluded Patterson was not disabled. The Appeals Council denied Patterson's request for review. Hence, the second decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Patterson seeks review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

4. Patterson contends the ALJ's finding he can perform light work is not supported by substantial evidence, the ALJ's finding he can perform light work is precluded by collateral estoppel and the ALJ's reliance on the vocational expert's testimony regarding other work which he can perform was contrary to law.

5. In order to qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). Social Security Administration regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if at any step the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

6. At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

7. The record reveals in October, 1989, Patterson developed diverticulitis and underwent abdominal surgery, including bowel resection and placement of a colostomy bag. (Transcript of Record "Tr.") 89. In February, 1990 the colostomy bag was removed. *Id.* On February 13, 1990, a great deal of improvement was noted and his intestinal gas patterns were within normal limits. Tr. 123.

8. On May 2, 1991, Dr. Schneider performed a consultative examination. Tr. 124-129. Dr. Schneider found Patterson had reasonably good bowel function and his primary complaint was abdominal bulging and pain upon sitting, standing, or walking. Tr. 125. Patterson told Dr. Schneider his maximum weight was 305, his weight one year before the examination was 270 and his weight at the time was 292. Tr. 125. Dr. Schneider found Patterson was limited to 30 minutes standing, or 30 minutes walking, before the burning sensation started. Tr. 126. Patterson rated the pain at a grade 3 on a scale of 1 to 10. Tr. 126. Dr. Schneider observed Patterson demonstrated consistent abdominal discomfort and pain with any movement. Tr. 127. Dr. Schneider noted Patterson seemed to be a stoic individual who tended to minimize his complaints. *Id.* Dr. Schneider concluded Patterson

could perform work related activities with some restrictions. Tr. 128.

9. On January 13, 1994, Dr. Davis performed another consultative examination. Tr. 200-03. Dr. Davis noted Patterson had several large protuberant abdominal hernias and continuous abdominal pain aggravated by standing and sitting. Tr. 201. Patterson told Dr. Davis he could walk up to a mile and half and could ride a bicycle for up to a mile and a half. Tr. 201. He also told Dr. David he could load grocery bags in and out of his truck. Tr. 201. Dr. Davis opined Patterson could lift a maximum of 20 pounds and could frequently lift ten pounds. Dr. Davis further found Patterson's capacity for standing and walking was not particularly impaired, his capacity for sitting was not impaired, he was able to go up and down stairs with a railing, he was able to occasionally bend and stoop, but was not able to kneel or crouch. Tr. 202-03.

10. Patterson contends the ALJ's finding he retains the residual functional capacity for light work in not supported by substantial evidence. Light work involves lifting no more than 20 pounds at a time, with frequent lifting and carrying of objects weighing up to 10 pounds. 20 C.F.R. §404.1567 (b). Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. *Id.* In his second decision, the ALJ analyzed the medical evidence and testimony and concluded Patterson retained the residual functional capacity to perform a wide range of light work. Tr. 171-172.

11. In arriving at this finding, the ALJ referred to a report from Dr. Bricknell at University of New Mexico Hospital which stated Patterson was working at an ice plant. Tr. 171. Patterson has submitted an affidavit stating he has never been to University of New Mexico Hospital for medical attention and he never worked in an ice plant. Tr. 155. The record indicates the letter of Dr.

4

Bricknell and the two pages of medical records which follow refer to a James M. Patterson, who was born on October 26, 1961. Tr. 149-151. These records do not refer to claimant, who is James L. Patterson, born on April 5, 1942. Consideration of these records was therefore improper. However, any error was harmless because the ALJ considered many other aspects of the record.

12. In making his residual functional capacity determination the ALJ relied on the records and reports of Dr. Schneider, Dr. Campbell, and Dr. Davis. Tr. 171. Dr. Davis found Patterson could lift a maximum of 20 pounds and could frequently lift ten pounds and his capacity for standing and walking was not particularly impaired. Tr. 202. The ALJ also relied on Patterson's testimony and his description of his daily activities, as well as his attempts to work. Tr. 171-177. At the first hearing, Patterson testified he could lift up to 20 pounds without too much pain, could stand for two hours and had no problems sitting. Tr. 45-51. At the second hearing, Patterson testified he could lift 20 pounds occasionally without too much pain, and could lift 10 to 15 pounds with no pain and could stand for 30 minutes. The ALJ also considered the fact that Patterson did not take any medication at the time of the first hearing. Tr. 52.

13. Patterson contends the ALJ's finding that he has the residual functional capacity for light work is not supported by substantial evidence. In support of this argument, Patterson argues the physician's reports were taken out of context and did not constitute positive evidence of residual functional capacity. In applying the substantial evidence standard, this court is not free to reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d at 1395. This court may not reverse the ALJ merely because there is also evidence which supports the claimant. *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992). The medical records and physician's reports, as well as Patterson's testimony, are substantial evidence which support the ALJ's finding

that Patterson retained the residual functional capacity to perform a wide range of light work. Therefore, Patterson's first argument is without merit.

14. Patterson also argues the ALJ's finding he can perform light work is precluded by collateral estoppel. In his first decision, the ALJ found Patterson retained the residual functional capacity for sedentary work. Tr. 24. In his second decision, however, the ALJ found Patterson retained the residual functional capacity for a wide range of light work. Tr. 181. It is true prior administrative determinations may be entitled to preclusive effect. *Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987). However, the doctrine of collateral estoppel does not apply if the time periods under review differ. *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996). The second decision was issued over four years after the first decision. In addition, the ALJ considered additional information for the second decision which was not available at the time of the first decision. Tr. 214-312. The record for the second decision was therefore different from the record for the first decision. Under these circumstances, the doctrine of collateral estoppel did not preclude the ALJ from finding Patterson retained the residual functional capacity for a wide range of light work.

15. Finally, Patterson contends and the ALJ's reliance on the vocational expert's testimony regarding other work which he can perform was contrary to law. Patterson essentially argues the ALJ should have applied the grids in his second decision as he had in the first. If the ALJ found Patterson had the residual functional capacity for sedentary work and was a person closely approaching advanced age, the grids would direct a finding of disabled. 20 C.F.R. Subpt. P, App. 2, Table No. 1, Rule No. 201.14. However, the ALJ found Patterson had the residual functional capacity to perform a wide range of light work. At a light work residual functional capacity, the grids do not direct a finding that the claimant is disabled. 20 C.F.R. Subpt. P, App. 2, Table No. 21, Rule No.

6

202.14. As authorized by the regulations, the ALJ obtained the testimony of a vocational expert and relied on this testimony in determining Patterson was not disabled. The ALJ thus applied correct legal standards and substantial evidence supports his decision.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and substantial evidence supports the decision. The motion to reverse and remand for payment of benefits should be denied and this case should be dismissed.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**
Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.